Filed 1/15/20

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN


| | |
|---|---|
| THE PEOPLE, | B296630 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA245638-03) |
| v. | |
| NICK VERDUGO, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of Los Angeles County, Ronald S. Coen, Judge. Affirmed.

Allison H. Ting, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (SB 1437), effective January 1, 2019, amended the felony murder rule and eliminated the natural and probable consequences doctrine as it relates to murder. SB 1437 also permits, through new Penal Code section 1170.95,[1] an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of SB 1437's changes to the definition of the crime. Section 1170.95, subdivision (b), prescribes the information that must be included in the petition. Section 1170.95, subdivision (c), requires the sentencing court to review the petition; determine if it makes a prima facie showing the petitioner falls within the provisions of section 1170.95; and, "[i]f the petitioner has requested counsel, . . . appoint counsel to represent the petitioner." After counsel has been appointed, the prosecutor is to file and serve a response to the petition; and the petitioner may file a reply. If the petitioner has made a prima facie showing he or she is entitled to relief, the court must issue an order to show cause (§ 1170.95, subd. (c)) and conduct a hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts (§ 1170.95, subd. (d)(1)).

Nick Verdugo contends section 1170.95, subdivision (c), mandates the appointment of counsel whenever, as here, a "facially sufficient petition" has been filed—that is, one that contains the basic averments required by subdivision (b)(1)(A),

---

[1] Statutory references are to this code.

2

(B) and (C)—and argues the superior court erred in summarily denying his petition without appointment of counsel. However, the relevant statutory language, viewed in context, makes plain the Legislature's intent to permit the sentencing court, before counsel must be appointed, to examine readily available portions of the record of conviction to determine whether a prima facie showing has been made that the petitioner falls within the provisions of section 1170.95—that is, a prima facie showing the petitioner may be eligible for relief because he or she could not be convicted of first or second degree murder following the changes made by SB 1437 to the definition of murder in sections 188 and 189. Accordingly, we reject Verdugo's argument the superior court lacked jurisdiction to deny his section 1170.95 petition on the merits without first appointing counsel and allowing the prosecutor and appointed counsel to brief the issue of his entitlement to relief and affirm the court's summary denial of Verdugo's petition, which was properly based on its ruling Verdugo was ineligible for relief as a matter of law.

### FACTUAL AND PROCEDURAL BACKGROUND

Verdugo was convicted in 2006 following a jury trial of first degree murder (§§ 187, subd. (a), 189), conspiracy to commit murder (§§ 182, subd. (a)(1), 187) and two other felonies. The jury also found true special firearm-use and criminal street gang enhancement allegations. Verdugo was sentenced to an aggregate state prison term of 57 years 8 months to life. We affirmed the convictions on appeal but modified Verdugo's sentence to correct several unauthorized provisions. (*People v. Barraza* (June 17, 2008, B194415) [nonpub. opn.].)

On January 16, 2019 Verdugo petitioned for sentencing relief under SB 1437. He utilized a downloadable form

3

petition/declaration prepared by Re:Store Justice, a cosponsor of the legislation (see Sen. Com. on Public Safety, Rep. on Sen. Bill No. 1437 (2017-2018 Reg. Sess.) Apr. 24, 2018, p. 1), on which Verdugo checked boxes 1, 2a and 3, stating, in language paralleling that of section 1170.95, subdivision (a)(1), (2), and (3), "A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine"; "At trial, I was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine"; and "I could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019." Verdugo also checked box 4, requesting the court appoint counsel for him during the resentencing process.[2]

Verdugo's petition attached a copy of an 18-page document that appears to be an almost-final version of the jury instructions used by the court at Verdugo's joint trial with codefendant Bryant Barraza.[3] Included among the instructions are CALJIC

---

[2] A copy of the petition form provided on the Re:Store Justice website, identical to the one used by Barraza, is attached as an appendix to this opinion. (See SB 1437 Petition – Re:Store Justice <restorecal.org/sb1437petition/> [as of Jan. 15, 2020], archived at <https://perma.cc/4XQY-YYEY>.)

[3] Although the document has a handwritten notation, "Final Jury Instructions," unlike the jury instructions in the record on appeal in *People v. Barraza*, *supra*, B194415, it is not dated and signed by the trial judge and does not include the text of CALJIC No. 3.18, Testimony of Accomplice or Codefendant To Be Viewed With Care and Caution. However, the language of the

4

Nos. 8.26 and 8.69. CALJIC No. 8.26, as given, stated, "If a number of persons conspire together to commit willful, deliberate, and premeditated Murder, and if the life of another person is taken by one or more of them in the perpetration of, or an attempt to commit that crime, and if the killing is done in furtherance of the common design and to further that common purpose, or is the natural and probable consequence of the pursuit of that purpose, all of the co-conspirators are equally guilty of murder in the first degree, whether the killing is intentional, unintentional, or accidental." The second paragraph of this instruction defined the term "natural and probable." CALJIC No. 8.69 stated in part, "A conspiracy to commit murder is an agreement entered into between two or more persons with the specific intent to agree to commit the crime of murder and with the further specific intent to commit that murder, followed by an overt act committed in this state by one or more of the parties for the purpose of accomplishing the object of the agreement. Conspiracy is a crime. [¶] The crime of conspiracy to commit murder requires proof that the conspirators harbored express malice aforethought, namely, the specific intent to kill unlawfully another human being."

There were no other attachments to the petition, and Verdugo submitted no other information regarding his conviction for first degree murder.

The matter was called on January 24, 2019. Verdugo was not present. The court summarily denied the petition "as petitioner is not entitled to relief as a matter of law." The court's

---

instructions quoted in our opinion regarding conspiracy to commit murder is identical to that in the draft instructions attached to Verdugo's petition.

5

minute order explained, "Besides first degree murder, petitioner was convicted of conspiracy to commit murder, a crime requiring express malice. In addition, the appellate opinion affirming the petitioner's conviction and sentence reflects that the petitioner was convicted as a direct aider and abettor, with malice aforethought, and not on a theory of felony murder of any degree or a theory of natural and probable consequences."

## DISCUSSION

1. *SB 1437 and the Right To Petition To Vacate Certain Prior Convictions for Murder*

    a. *Statutory changes relating to accomplice liability for murder*

On September 30, 2018 the Governor signed SB 1437, which, effective January 1, 2019, amended Penal Code sections 188 and 189, significantly modifying the law relating to accomplice liability for murder. In its uncodified findings and declarations the Legislature stated, "It is necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The Legislature also declared, "Except as stated in subdivision (e) of Section 189 of the Penal Code [relating to first degree felony murder], a conviction for murder requires that a person act with malice aforethought. A person's culpability for murder must be premised upon that person's own actions and subjective mens rea." (*Id.*, § 1, subd. (g).)

6

To effectuate this legislative purpose, SB 1437 added a crucial limitation to section 188's definition of malice for purposes of the crime of murder.[4] New section 188, subdivision (a)(3), provides, "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime."[5]

New section 189, subdivision (e), in turn, provides with respect to a participant in the perpetration or attempted perpetration of a felony listed in section 189, subdivision (a), in which a death occurs—that is, as to those crimes that provide the basis for the charge of first degree felony murder—that the individual is liable for murder "only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless

---

[4] Section 187 defines murder as "the unlawful killing of a human being, or a fetus, with malice aforethought."

[5] Prior to enactment of SB 1437, section 188, subdivision (a), provided, "For purposes of Section 187, malice may be express or implied. [¶] (1) Malice is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature. [¶] (2) Malice is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart."

indifference to human life, as described in subdivision (d) of Section 190.2."[6]

> b. *Petitions to vacate prior convictions for felony murder or murder under the natural and probable consequences doctrine*

SB 1437 also added section 1170.95 to the Penal Code, which permits an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and to be resentenced on any remaining counts if he or she could not have been convicted of first or second degree murder because of SB 1437's changes to sections 188 and 189. (§ 1170.95, subd. (a).) Section 1170.95 provides a petition for relief must include: "(A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [¶] (C) Whether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1).) The petition must be filed in the sentencing court and served by the petitioner on the prosecutor and the attorney who

---

[6] The conditions for imposing liability for first degree felony murder specified in section 189, subdivision (e), do not apply to a participant in one of the enumerated felonies when the victim is a peace officer who was killed while in the course of his or her duties when the defendant knew or reasonably should have known that the victim was a peace officer engaged in the performance of his or her duties. (See § 189, subd. (f).)

8

represented him or her in the trial court or the county public defender.[7]

If any of the required information is missing and cannot be readily ascertained by the court, "the court may deny the petition without prejudice to the filing of another petition and advise the petitioner that the matter cannot be considered without the missing information." (§ 1170.95, subd. (b)(2).)

If the petition contains all required information, section 1170.95, subdivision (c), prescribes a two-step process for the court to determine if an order to show cause should issue: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

Once the order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).) If the prosecutor does not stipulate to vacating the conviction and resentencing the petitioner (§ 1170.95, subd. (d)(2)), the People have the opportunity to present new and additional evidence at the hearing to demonstrate the petitioner is not entitled to

---

[7] If the judge who originally sentenced the petitioner is not available, the presiding judge must designate another judge to rule on the petition. (§ 1170.95, subd. (b)(1).)

resentencing. (§ 1170.95, subd. (d)(3).) The petitioner also has the opportunity to present new or additional evidence in support of the resentencing request. (*Ibid.*)

> 2. *Section 1170.95, Subdivision (c), Authorizes the Court To Preliminarily Determine Whether the Petitioner Has Made a Prima Facie Showing of Eligibility for Relief Under Section 1170.95*

As discussed, pursuant to section 1170.95, subdivision (b)(2), the sentencing court may deny a petition without prejudice if any of the information required by subdivision (b)(1) is missing from the petition and cannot be readily ascertained by the court. This initial review thus determines the facial sufficiency of the petition. Subdivision (c) then prescribes two additional court reviews before an order to show cause may issue, one made before any briefing to determine whether the petitioner has made a prima facie showing he or she falls within section 1170.95—that is, that the petitioner may be eligible for relief—and a second after briefing by both sides to determine whether the petitioner has made a prima facie showing he or she is entitled to relief.

The nature and scope of section 1170.95, subdivision (c)'s second prima facie review, made following a round of briefing by the prosecutor and counsel for petitioner, is equivalent to the familiar decisionmaking process before issuance of an order to show cause in habeas corpus proceedings, which typically follows an informal response to the habeas corpus petition by the Attorney General and a reply to the informal response by the petitioner. (See Cal. Rules of Court, rule 4.551(b).) Indeed, the standard for subdivision (c)'s second review—"a prima facie showing that he or she is entitled to relief"—is identical to the standard for issuance of an order to show cause in a habeas

10

proceeding, as set forth in rule 4.551(c)(1): "The court must issue an order to show cause if the petitioner has made a prima facie showing that he or she is entitled to relief. In doing so, the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." (See *In re Miranda* (2008) 43 Cal.4th 541, 575 ["[i]n issuing an order to show cause in a habeas corpus proceeding, a court makes "'an implicit preliminary determination'" as to claims within the order that the petitioner "'has made a sufficient prima facie statement of specific facts which, if established, entitle him to . . . relief'""]; *People v. Duvall* (1995) 9 Cal.4th 464, 475 ["If no prima facie case for relief is stated, the court will summarily deny the petition. If, however, the court finds the factual allegations, taken as true, establish a prima facie case for relief, the court will issue an OSC."].)

What then is the court's role in conducting the first prima facie review of the petition required by section 1170.95, subdivision (c)?[8] Verdugo's argument to the contrary notwithstanding, it must be something more than simply determining whether the petition is facially sufficient; otherwise given subdivision (b)(2), this portion of subdivision (c) would be

_____

[8] We review de novo questions of statutory construction. (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1041.) "Our primary task 'in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. [Citation.] We consider first the words of a statute, as the most reliable indicator of legislative intent.'" (*Ibid.*)

11

surplusage. It is, of course, our duty in interpreting section 1170.95 to give meaning to all parts of the statute to the extent possible. (See *Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1037 [interpretations of statutes that render words surplusage are to be avoided]; *Reno v. Baird* (1998) 18 Cal.4th 640, 658 ["[i]t is a maxim of statutory construction that '[c]ourts should give meaning to every word of a statute if possible, and should avoid a construction making any word [or phrase] surplusage'"].) But the pre-briefing determination whether the petitioner has made a prima facie showing he or she "falls within the provisions of this section" must also be different from the post-briefing prima facie showing the petitioner "is entitled to relief," required for issuance of an order to show cause, if only in the nature and extent of materials properly presented to the court in connection with the second prima facie step, or else the two prima facie showings specified in subdivision (c) would be redundant.

The midpoint between section 1170.95, subdivision (b)(2)'s initial finding the petition is facially sufficient and subdivision (c)'s second prima facie showing the petitioner is entitled to relief is a preliminary review of statutory eligibility for resentencing, a concept that is a well-established part of the resentencing process under Propositions 36 and 47. (See, e.g., *People v. Page* (2017) 3 Cal.5th 1175, 1188-1189 [Proposition 47]; *Teal v. Superior Court* (2014) 60 Cal.4th 595, 600 [Proposition 36].) The court's role at this stage is simply to decide whether the petitioner is ineligible for relief as a matter of law, making all factual inferences in favor of the petitioner. (See generally *In re Raymond G.* (1991) 230 Cal.App.3d 964, 972 ["'[*p*]*rima facie*

evidence is that which suffices for the proof of a particular fact, until contradicted and overcome by other evidence'"].)
Although subdivision (c) does not define the process by which the court is to make this threshold determination, subdivisions (a) and (b) of section 1170.95 provide a clear indication of the Legislature's intent. As discussed, subdivision (b)(2) directs the court in considering the facial sufficiency of the petition to access readily ascertainable information. The same material that may be evaluated under subdivision (b)(2)—that is, documents in the court file or otherwise part of the record of conviction that are readily ascertainable—should similarly be available to the court in connection with the first prima facie determination required by subdivision (c). In particular, because a petitioner is not eligible for relief under section 1170.95 unless he or she was convicted of first or second degree murder based on a charging document that permitted the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine (§ 1170.95, subd. (a)(1), (2)), the court must at least examine the complaint, information or indictment filed against the petitioner; the verdict form or factual basis documentation for a negotiated plea; and the abstract of judgment. Based on a threshold review of these documents, the court can dismiss any petition filed by an individual who was not actually convicted of first or second degree murder. The record of conviction might also include other information that establishes the petitioner is ineligible for relief as a matter of law because he or she was convicted on a ground that remains valid notwithstanding SB 1437's amendments to sections 188 and 189 (see § 1170.95, subd. (a)(3))—for example, a petitioner who admitted being the actual killer as part of a guilty plea or who was found to have

13

personally and intentionally discharged a firearm causing great bodily injury or death in a single victim homicide within the meaning of section 12022.53, subdivision (d). (See *People v. Lewis* (Jan. 6, 2020, B295998) __ Cal.App.5th __ [2020 Cal.App. Lexis 9] [superior court can consider record of conviction in evaluating the petitioner's initial prima facie showing under section 1170.95, subdivision (c)].)

Because the court is only evaluating whether there is a prima facie showing the petitioner falls within the provisions of the statute, however, if the petitioner's ineligibility for resentencing under section 1170.95 is not established as a matter of law by the record of conviction, the court must direct the prosecutor to file a response to the petition, permit the petitioner (through appointed counsel if requested) to file a reply and then determine, with the benefit of the parties' briefing and analysis, whether the petitioner has made a prima facie showing he or she is entitled to relief. (Cf. *People v. Page*, *supra*, 3 Cal.5th at p. 1189; *People v Romanowski* (2017) 2 Cal.5th 903, 916.)[9]

That the Legislature intended this three-step evaluation of a section 1170.95 petition is confirmed by the history of the legislation. (See *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 483-484 [court may look to revisions to a bill during the enactment process to determine legislative intent].) As

---

[9]    In response to the petition the prosecutor may be able to identify additional material from the record of conviction not accessible to, or reviewed by, the court during its first prima facie determination (for example, jury instructions) that establish the petitioner is not eligible for relief. In a reply the petitioner, represented by counsel, may rebut the prosecutor's claim of ineligibility.

14

introduced, the provision in SB 1437 that permitted a convicted murderer to request the recall of sentence and resentencing contemplated only two steps. First, it required the court to return the petition to the petitioner if information was missing and to advise the petitioner the matter could not be considered without the missing information. Second, it directed the court to request various documents from the record of conviction,[10] as well as concurrently to provide notice to the attorney who represented the petitioner in the superior court and the district attorney in the county where the petitioner had been prosecuted "request[ing] that a response be filed from both parties as to whether the petitioner is entitled to relief." (Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as introduced Feb. 16, 2018, § 6.) The court was required to hold a resentencing hearing if it found there was "sufficient evidence that the petitioner falls within the provisions of this section." (*Ibid*.)

The next iteration of the bill deleted the initial review of the petition to determine whether it was complete and slightly revised the subsequent step to require the court, immediately upon receipt of the petition, to provide notice to defense counsel

---

[10]   The proposal directed the court upon receipt of the petition to request: "(1) A copy of the charging documents from the superior court in which the case was prosecuted. [¶] (2) The abstract of judgment. [¶] (3) The reporter's transcript of the plea, if applicable, and the sentencing transcript. [¶] (4) The verdict forms, if a trial was held. [¶] (5) Any other information the court finds relevant to its decision, including information related to the charging, conviction, and sentencing of the petitioner's codefendants in the trial court." (Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as introduced Feb. 16, 2018, § 6.)

(either the attorney who represented the petitioner in the superior court or the public defender if the attorney of record is no longer available) and the district attorney and to order a response from both parties "as to whether the petitioner is entitled to relief." (Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as amended May 25, 2018, § 6.) As before, the court was required to hold a resentencing hearing if it found there was "sufficient evidence that the petitioner falls within the provisions of this section." (*Ibid*.)

The final version of the bill revived the initial review of the petition for completeness—that is, its facial sufficiency—as section 1170.95, subdivision (b)(2). It also introduced the two-step prima facie showing process contained in subdivision (c). (Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as amended Aug. 20, 2018, § 4.) Unlike the May 25, 2018 version of the bill, which directed the court to initiate the briefing process upon receipt of the petition without any review at all, even for the petition's completeness, this final iteration, which authorizes the court both to dismiss the petition if it lacks any required information and to determine if there is a prima facie showing the petitioner falls within the provisions of the statute before ordering briefing, indicates the Legislature's intent that the superior court perform a substantive gatekeeping function, screening out clearly ineligible petitioners before devoting additional resources to the resentencing process. (See *People v. Lewis*, *supra*, __ Cal.App.5th at p. ___ [2020 Cal.App. Lexis 9 at *11][allowing the superior court to consider the record of conviction will avoid misuse of judicial resources because even a cursory review of the court file may show as a matter of law the petitioner is not eligible for relief]; see generally Sen. Com. on Appropriations, Analysis

16

Addendum to Rep. on Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as amended May 25, 2018, p. 1 [noting "potentially-major workload costs in the millions of dollars to the courts to process and adjudicate petitions," as well as "[u]nknown costs to county District Attorneys' Offices and Public Defenders' Offices to litigate petitions for resentencing" and "[u]nknown, potentially-major costs in the hundreds of thousands of dollars to the millions of dollars to the [Department of Corrections and Rehabilitation] to supervise and transport inmates from state facilities to the appropriate courthouses for resentencing hearings"].)

> 3. *Section 1170.95, Subdivision (c), Does Not Require Appointment of Counsel Prior to the Court's Initial Prima Facie Review*

The first sentence of section 1170.95, subdivision (c), directs the court to review the petition and determine if the petitioner has made the requisite prima facie showing. The second sentence provides, if the petitioner has requested counsel, the court must appoint counsel to represent him or her. The third sentence requires the prosecutor to file and serve a response to the petition within 60 days of service of the petition and permits the petitioner to file a reply to the response. The structure and grammar of this subdivision indicate the Legislature intended to create a chronological sequence: first, a prima facie showing; thereafter, appointment of counsel for petitioner; then, briefing by the parties. (*People v. Lewis*, *supra*, __ Cal.App.5th at p. __ [2020 Cal.App. Lexis 9 at p. *14] ["[w]hen the statutory framework is, overall, chronological, courts will construe the timing of particular acts in relation to other acts according to their location within the statute; that is, actions described in the

17

statute occur in the order they appear in the text"]; see *KB Home Greater Los Angeles, Inc. v. Superior Court* (2014) 223 Cal.App.4th 1471, 1477 [same]; *Nielsen v. Preap* (2019) ___ U.S. ___ [139 S.Ct. 954, 965, 203 L.Ed.2d 333] ["'[w]ords are to be given the meaning that proper grammar and usage would assign them'"]; *Bloate v. United States* (2010) 559 U.S. 196, 209 [130 S.Ct. 1345, 176 L.Ed.2d 54] [rejecting proposed interpretation of statute "because it would ignore the structure and grammar" of the subsection at issue]; see also *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 144 ["we interpret statutory language within its context, and in light of its structure, analogous provisions, and any other appropriate indicia of its purpose"].)

Indeed, although Verdugo disputes the nature of the initial prima facie showing required by section 1170.95, subdivision (c), he does not argue counsel should be appointed prior to the court's resolution of that issue. Nor would it make sense as a practical matter to appoint counsel earlier in the process since counsel's first task is to reply to the prosecutor's response to the petition. If, as here, the court concludes the petitioner has failed to make the initial prima facie showing required by subdivision (c), counsel need not be appointed. Of course, if the petitioner appeals the superior court's summary denial of a resentencing petition, appointed counsel on appeal can argue the court erred in concluding his or her client was ineligible for relief as a matter of law.

4. *The Superior Court Correctly Concluded Verdugo Is Ineligible as a Matter of Law for Any Relief Under Section 1170.95*

A court of appeal opinion, whether or not published, is part of the appellant's record of conviction. (*People v. Woodell* (1998) 17 Cal.4th 448, 456; *People v. Cruz* (2017) 15 Cal.App.5th 1105, 1110; *People v. Brimmer* (2014) 230 Cal.App.4th 782, 800.) Accordingly, it was proper for the superior court to consider this court's opinion in *People v. Barraza*, *supra*, B194415, which affirmed Verdugo's convictions for conspiracy to commit murder and first degree murder, in determining whether he had made a prima facie showing of eligibility for relief under section 1170.95 or whether he was ineligible for relief as a matter of law. Based on the language of our opinion, the court correctly concluded Verdugo's murder conviction was necessarily predicated on a finding he had acted with express malice and, therefore, he was ineligible for relief under section 1170.95.[11]

a. *The conspiracy and the murder*

---

[11] Other than observing in a footnote in his opening brief that our opinion "did not state that appellant was convicted as a direct aider and abettor," as the superior court wrote in its minute order, Verdugo does not challenge on appeal the court's conclusion his murder conviction was not based on a theory of felony murder or natural and probable consequences. Instead, his appeal "is addressed only to the procedural, jurisdictional, requirements" of section 1170.95. Issues not adequately developed in an appellate brief are generally deemed forfeited. (See *Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1248 ["'[w]hen an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary'"].)

The *Barraza* opinion described a portion of the evidence at trial in the following language:  "Barraza (also known as 'Stranger') and Verdugo (also known as 'Musky') were active members of the Arizona Maravilla (AMV) street gang.  Peter Quijas (also known as 'Pistol Pete'), Angel Martinez (also known as 'Bugsy') and David Lopez (also known as 'Grumpy') were also members of AMV.  [¶]  In May 2000, after Martinez told Barraza, Verdugo, Quijas and Lopez he had been beaten up by members of the rival Marianna Maravilla gang (MMV), Barraza, Quijas and Verdugo devised a plan to retaliate by shooting a member of MMV.  As crafted, the retaliation plan required Verdugo to drive a car into MMV territory and look for MMV gang members.  When he spotted an MMV member, he would inform Quijas of the member's whereabouts using a two-way radio.  Quijas and Barraza would then drive to the scene and kill the MMV member.  Barraza agreed to be the shooter.  Lopez did not say anything during this conversation.  He agreed to take Martinez home.  [¶]  In accordance with the plan, Verdugo drove by himself to look for members of the MMV gang.  Using his two-way radio, Verdugo contacted Barraza and Quijas and told them an MMV member known as 'Young Guns' was wearing a Los Angeles Lakers jersey and playing basketball on a neighborhood court.  Barraza and Quijas drove in a van to the location identified by Verdugo.  Barraza got out of the van; Quijas remained in the driver's seat.  When the people on the basketball court saw Barraza, they ran.  Ernesto Ortiz, Jr., who was not a member of any gang, ran in a different direction from the others—to his house near the basketball court.  Seeing that Ortiz was wearing a Lakers jersey and mistaking him for 'Young Guns,' Barraza aimed his handgun and fired eight or nine shots at him.  Ernesto Ortiz, Jr.'s father

heard the gunshots, ran outside and saw Barraza shooting at his son. He screamed at his son to 'run' and rushed to help him. Ernesto Ortiz, Jr. was shot running to his father and collapsed bleeding in his father's arms. He later died from his gunshot wounds. Ernesto Ortiz, Sr. suffered a gunshot wound to his abdomen while running to aid his son."

     b. *The contention the instructions permitted the jury to find Barraza and Verdugo guilty of conspiracy to commit murder without regard to whether either of them personally intended to kill*

Quijas was charged along with Barraza and Verdugo with murder and conspiracy to commit murder. By the time of trial, however, Quijas had pleaded guilty to those offenses as part of a negotiated agreement for a state prison sentence to run concurrently with an unrelated prison term he was serving; and he testified as a prosecution witness. Nonetheless, the jury heard evidence the conspiracy at issue in the case involved three individuals, Barraza, Verdugo and Quijas.

On appeal Barraza and Verdugo contended the trial court committed prejudicial error by instructing the jury that to prove conspiracy to commit murder the People had to establish "[a]t least two of the persons to the agreement harbored express malice aforethought, namely a specific intent to kill unlawfully another human being."[12] Barraza and Verdugo argued the jury

---

[12] At the time CALJIC No. 8.69 provided the option of instructing "[Each] [At least two] of the persons to the agreement harbored express malice aforethought, namely a specific intent to kill unlawfully another human being." The Use Note to CALJIC No. 8.69 (Spring 2007 ed.) at page 409 explained, "The alternate

may have understood it could convict both of them on the conspiracy charge even if it found only one of them had specifically intended to kill a rival gang member. We rejected that argument, explaining there was no reasonable likelihood the jury understood the court's conspiracy instructions, viewed in their entirety, in this manner.[13] After describing a number of the court's other instructions, including an instruction that defined a conspiracy to commit murder as "an agreement entered into between two or more persons with the specific intent to agree to

bracketed wording has been provided . . . to accommodate the situation where there is a feigned accomplice."

[13] Ten years after our decision in *People v. Barraza, supra*, B194415, the Supreme Court in *People v. Garton* (2018) 4 Cal.5th 485 held it was error to instruct the jury with the "at least two" version of CALJIC No. 8.69 in a case involving more than two alleged members of a conspiracy, none of whom is feigning involvement, because it "could potentially lead a jury to find an individual conspirator guilty without finding that he or she possessed a specific intent to agree or to kill." (*Id.* at p. 516.) Whether giving the incorrect instruction is harmless error must be measured by the beyond-a-reasonable-doubt standard of *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 705] because each defendant's specific intent to commit murder is an essential element of the offense. (*People v. Wilkins* (2013) 56 Cal.4th 333, 348 ["[w]hen the jury is 'misinstructed on an element of the offense . . . reversal . . . is required unless we are able to conclude that the error was harmless beyond a reasonable doubt'"]; see *People v. Brooks* (2017) 3 Cal.5th 1, 69 ["'[m]isdescription of an element of a charged offense is subject to harmless error analysis and does not require reversal if the misdescription was harmless beyond a reasonable doubt'"].)

commit the crime of murder and with the further specific intent to commit that murder, followed by an overt act," and the instruction that the jury must consider the conspiracy charge separately as to each defendant, we stated, "When viewed in context, the 'at least two' language challenged by Barraza and Verdugo simply told the jury that in this case—in which a conspiracy among Barraza, Verdugo and Quijas was alleged—it need not find both Barraza and Verdugo guilty of conspiracy to commit murder in order to find either of them guilty of that offense."

### c. *The description of the basis for Verdugo's murder conviction*

After describing the various instructions relating to conspiracy and concluding it was not reasonably likely the jury was confused, we continued, in language relied upon by the superior court in this proceeding, "The implausibility of any jury confusion as to the required specific intent is confirmed by its findings as to both Barraza and Verdugo that the murder was premeditated and deliberated. The jury's verdict that both Barraza and Verdugo were guilty of premeditated murder necessarily included a finding that both harbored the specific intent to kill Ortiz Jr. A finding that Verdugo had aided and abetted the premeditated murder necessarily included a finding that he, not simply Barraza, specifically intended to inflict death. (See *People v. Jurado* [(2006)] 38 Cal.4th [72,] 123 [even though instruction on conspiracy omitted mention of required specific intent to commit target offense, omission was harmless beyond a reasonable doubt; jury's finding killing was premeditated and

23

deliberated necessarily included finding defendant had specific intent to kill].)"[14]

The superior court correctly understood this language to mean that, while Barraza, not Verdugo, was the shooter, our review of the record confirmed that Verdugo's conviction for first degree murder was based on a jury finding he had aided and abetted Barraza in the commission of that offense and had acted with express malice in doing so. As the Supreme Court recently explained in parallel circumstances in *People v. Beck & Cruz* (2019) 8 Cal.5th 548, 645, despite the fact the court had mentioned the natural and probable consequences doctrine in the conspiracy instruction, "Beck and Cruz were charged with conspiracy *to murder*, not conspiracy to commit a lesser crime that resulted in murder. There is thus no possibility they were found guilty of murder on a natural and probable consequences theory."

## DISPOSITION

The order summarily denying the section 1170.95 petition is affirmed.

PERLUSS, P. J.

We concur:

SEGAL, J.          FEUER, J.

---

[14] Verdugo's conviction for murder was not specifically at issue and was not otherwise discussed in the opinion.

24

# APPENDIX

| Petitioner Name | *For Court Use Only* |
|---|---|
| CDCR # (if applicable): | |
| Institution Name (if applicable) | |
| Street Address | |
| City:                    State: | |
| Zip: | |
| Attorney Name (if applicable) | |
| State Bar No: | |
| **Superior Court of California, County of** | **Superior Court Case Name** |
| Street Address: | People of the State of California |
| Mailing Address: | v. |
| City, State, Zip: | |
| Branch Name: | **Superior Court Case Number** |
| | **Year of Conviction:** |
| **PETITION FOR RESENTENCING**<br>**(Penal Code § 1170.95)** | *For Court Use Only* |
| | Date: |
| | Time: |
| | Department: |

I, _____, **declare as follows:**

☐ **1.** A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.

☐ **2a.** At trial, I was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine;

**OR**

☐ **2b.** I pled guilty or no contest to 1st or 2nd degree murder in lieu of going to trial because I believed I could have been convicted of 1st or 2nd degree murder at trial pursuant to the felony murder rule or the natural and probable consequences doctrine.

☐ **3.** I could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code § § 188 and 189, effective January 1, 2019.

*Note: Box 1, Box 2a or 2b, and Box 3 must all apply in order to be resentenced under Penal Code § 1170.95.*

☐ **4.** I request that this court appoint counsel for me during this re-sentencing process.

☐ **5. (If applicable)** I was convicted of 1st degree felony murder and I could not now be convicted because of changes to Penal Code § 189, effective January 1, 2019, for the following reasons (all must apply):

☐ I was not the actual killer.

☐ I did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree.

☐ I was not a major participant in the felony **or** I did not act with reckless indifference to human life during the course of the crime or felony.

☐ The victim of the murder was **not** a peace officer in the performance of his or her duties, **or** I was not aware that the victim was a peace officer in the performance of his or her duties and the circumstances were such that I should not reasonably have been aware that the victim was a peace officer in the performance of his or her duties.

☐ **6. (If applicable)** I was convicted of 2nd degree murder under the natural and probable consequences doctrine or under the 2nd degree felony murder doctrine and I could not now be convicted of murder because of changes to Penal Code § 188, effective January 1, 2019.

26

☐ **7. (If applicable)** There has been a prior determination by a court or jury that I was not a major participant and/or did not act with reckless indifference to human life under Penal Code § 190.2(d). Therefore, I am entitled to be re-sentenced pursuant to § 1170.95(d)(2).

☐ **8.** I have mailed a copy of this Petition to the following:

☐ Office of the District Attorney

County of _____

_____
[Street Address]

_____
[City, State, Zip]

☐ Office of the Public Defender

County of _____

_____
[Street Address]

_____
[City, State, Zip]

OR

☐ _____
[Trial Attorney Name]

_____
[Firm Name]

_____
[Street Address]

_____
[City, State, Zip]

**I declare under penalty of perjury that the above is true except as to that stated on information or belief or that which is a legal conclusion and as to those, I believe them to be true.**

**Signature:** _____

**Name [Printed]:** _____

**Date:** _____